NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

MICHELLE H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, K.C., Z.H., K.H., *Appellees*.

No. 1 CA-JV 18-0480
FILED 7-11-2019

Appeal from the Superior Court in Maricopa County
No. JD 530364
The Honorable Jennifer E. Green, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Doriane F. Zwillinger
*Counsel for Appellee, Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Jon W. Thompson and Judge Kenton D. Jones joined.

---

**B R O W N**, Judge:

¶1 Michelle H. ("Mother") appeals the juvenile court's order terminating her parental rights to K.C., Z.H., and K.H. (collectively, "the children"), asserting the evidence does not sufficiently support the statutory grounds and termination is not in the children's best interests. For the reasons that follow, we affirm.

### BACKGROUND

¶2 Mother is the biological parent of K.C., born in 2006, and twins, Z.H. and K.H., born in 2010. Elton C. is the biological father of K.C. and asserted parental rights to Z.H. and K.H. but his paternity was not established, and he is not a party to this appeal.[1]

¶3 In October 2016, a private dependency petition was filed alleging the children were dependent due to Mother's drug use and neglect. Specifically, the petition alleged Mother used drugs around the children; the children went days without eating and frequently missed school; and the house had bed bugs. The juvenile court entered temporary orders, which made the children temporary wards of the court and placed them with the petitioner. At the initial dependency hearing, the court granted a motion by the Department of Child Safety ("DCS") to substitute DCS as the petitioner. DCS subsequently filed an amended dependency petition, alleging Mother was unable to parent due to substance abuse and neglect and asserting Mother uses "illicit substances and presented to the Department with sores on her face consistent with the effects of drug use" and was unable to provide for the children's basic needs in that they live without electricity for days at a time, go without food for extended periods, and miss excessive amounts of school. In February 2017, the court found the children dependent.

---

[1] In August 2018, the court terminated Elton C.'s parental rights to all three children and terminated John Doe's parental rights to K.H. and Z.H.

¶4            In April 2018, DCS moved to terminate Mother's parental rights, alleging the grounds of chronic substance abuse and 15 months' out-of-home placement.  Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), (B)(8)(c).  DCS also asserted termination was in the best interests of the children because it would allow them to be adopted.  Following a two-day termination hearing, the juvenile court granted DCS's motion on both grounds, explaining its ruling in a 20-page order.  Mother timely appealed.

**DISCUSSION**

¶5            Mother challenges the sufficiency of the evidence supporting the statutory grounds for termination.  When the juvenile court finds clear and convincing evidence supports multiple grounds for termination, we will affirm if reasonable evidence and inferences support the court's findings as to any of the grounds in the order.  *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).  We do not reweigh the evidence presented to the court because the "resolution of conflicting evidence is 'uniquely the province of the juvenile court' . . . even when 'sharply disputed' facts exist."  *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018) (citations omitted).

¶6            To terminate based on 15 months' out-of-home placement, the evidence must clearly and convincingly establish (1) the children have been in an out-of-home placement for a cumulative period of 15 months or longer; (2) DCS has made a "diligent effort to provide appropriate reunification services"; (3) the parent has not remedied the circumstances requiring the out-of-home placement; and (4) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future."   A.R.S. § 8-533(B)(8)(c).  The juvenile court must also consider "the availability of reunification services . . . and the participation of the parent in these services."  A.R.S. § 8-533(D).  Mother concedes the children have been in an out-of-home placement for more than 15 months but asserts the court erred because the evidence does not satisfy the statute's other requirements.

¶7            Mother first challenges the juvenile court's finding that DCS made reasonable and diligent efforts to reunify the family, stating she "just needs a little more time to complete services and reunify with the children." Mother's specific argument regarding DCS's efforts is unclear; however, to the extent her argument seeks to challenge the adequacy of services offered, the court expressly noted she did not raise that objection in any of the proceedings.  She has therefore waived any challenge in that regard. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 16 (App. 2014).

¶8      If Mother's argument is geared towards asserting that DCS's efforts were not diligent because DCS did not afford her the "time and opportunity to participate in programs designed to help her become an effective parent," *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994), Mother has misconstrued DCS's obligations. DCS must provide services and give the parent an opportunity to engage in the services. *Id.* But DCS is not required to ensure parents participate in or complete any service, *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 15 (App. 2011), nor is it required to wait an indefinite period before moving for termination, *Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994). Here, the dependency and termination proceedings occurred over the course of two years in which DCS offered Mother various services, including parent aide, therapeutic visitations, drug testing, substance abuse assessment and treatment, psychological evaluation, psychiatric evaluation, and individual and group counseling. On this record, reasonable evidence supports the juvenile court's finding that DCS met its obligation to make a diligent effort in providing appropriate reunification services.

¶9      Mother also argues the juvenile court erred because she proved she has remedied the circumstances leading to the out of home placement or "will do so in the near future" by participating in and completing the services offered. Mother's argument is essentially a request to reweigh the evidence, but our role is not to reweigh the evidence or substitute our judgment for that of the juvenile court. *Alma S.*, 245 Ariz. at 151, ¶ 18. Mother's drug use was one of the primary issues causing the out-of-home placement. The evidence presented at trial established that, although she demonstrated periods of sobriety, Mother tested positive for illegal drug use several times throughout the dependency and admitted to using methamphetamine for her birthday in February 2018 (more than 15 months after the children were removed from her care). *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 29 (App. 2010) (explaining that a parent's decision to use drugs "despite knowing the loss of [his or her] children is imminent" is evidence of a continuing substance abuse problem). Furthermore, Mother's psychologist testified that until Mother demonstrated one year of sobriety, she would not be considered "in recovery" from a substance abuse problem. Mother had only been sober for six months at the time of the termination hearing. We therefore conclude that reasonable evidence supports the court's finding that Mother had been unable to remedy the circumstances causing the placement and would not be able to do so in the near future.

¶10            Mother also challenges the juvenile court's finding that she is not capable of safely parenting the children, arguing her completion of most services DCS offered "establish[es] that [she] is capable of safely parenting the children now or in the near future."   The court's order explicitly considered Mother's progress throughout the proceedings, noting she had "completed all services except she is still participating in both ongoing drug testing . . . and individual counseling."   Despite this progress, the court concluded that she "has not made any real behavior changes." Furthermore, the court was not persuaded that Mother demonstrated she could safely parent the children because she "[m]ay have demonstrated appropriate parenting in a controlled environment of visitation, but . . . [i]n 'real life,' Mother has  . . . significant vulnerabilities and has not yet hit the significant milestone of one-year sobriety, securing long-term stable housing and employment, and managing her mental health."   Although Mother does not agree with how the court viewed the evidence, reasonable evidence supports its finding.   Mother tested positive for drug use at various times throughout the proceedings, was unemployed for the first year and a half of the dependency, obtained housing only two months before the hearing, and the DCS caseworker opined that Mother still "needs medication management (consistent with her psychiatric evaluation)."

¶11            Finally, Mother challenges the juvenile court's finding that termination of her parental rights is in the children's best interests, arguing the court "did not give sufficient weight" to her participation in reunification services or her bond with the children.   After finding the presence of a statutory ground for termination, the court must determine if the preponderance of the evidence establishes termination is in the best interests of the children. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).   Termination is in a child's best interests if the child will either benefit from severance or be harmed if severance is denied. *Alma S.*, 245 Ariz. at 150, ¶ 13.   In making this determination, the court must consider the totality of the circumstances, including "the parent's rehabilitation efforts," but the children's "'interest in stability and security' [is] the court's primary concern." *Id.* at 150–51, ¶¶ 12, 13, 15 (citation omitted).

¶12            The juvenile court found that termination will benefit the children "because they will be able to have permanency by way of adoption [and] will not have to live in a home with substance abuse or unmanaged mental health issues."   Mother does not challenge the court's findings regarding adoptability, and it is well-established that a court may find termination will benefit the child when "the current placement meets the child's needs and [a] prospective adoption is otherwise legally possible and likely." *Demetrius L.*, 239 Ariz. at 4, ¶ 12.   The evidence presented at the

hearing supports the court's finding. The DCS caseworker testified that the children are adoptable, their current placement is meeting their needs and wants to adopt them, and K.C., who was close to turning 12 at the time of the hearing, consented to the adoption. *Cf.* A.R.S. § 8-106 (A)(3) (explaining that a child over 12 must consent to an adoption).

**CONCLUSION**

¶13 We affirm the juvenile court's order terminating Mother's rights to the children.

